UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

RICHARD REYNOLDS,
         Plaintiff,

                 v.                                        NO. 3:13-cv-316(SRU)

BRIAN MURPHY, et al.,
         Defendants.

## RULING ON MOTION TO DISMISS

Richard Reynolds is currently incarcerated at Northern Correctional Institution in

Somers, Connecticut.  He filed this civil rights *pro se* pursuant to 42 U.S.C. § 1983 naming

former Commissioner Brian Murphy, Warden Angel Quiros, Deputy Wardens Faucher and

Lauren Powers and Unit Manager Jason Cahill as defendants.

On November 19, 2013, I dismissed the claims for money damages against the

defendants in their official capacities pursuant to 28 U.S.C. § 1915A(b)(2) and the claims under

the  Geneva Convention, the Fifth Amendment, the Eighth Amendment, the Equal Protection

Clause of the Fourteenth Amendment, the Due Process Clause of the Fourteenth Amendment

relating to confiscation of personal property, loss of job and the issuance and disposition of a

disciplinary report and the First Amendment relating to alleged retaliatory conduct pursuant to

28 U.S.C. § 1915A(b)(1).  The First Amendment claim relating to the defendants' alleged

improper confiscation of the plaintiff's magazines and the Fourteenth Amendment due process

claim relating to the plaintiff's placement on restraint status for an indefinite time period were

allowed to proceed against the defendants in their individual capacities and in their official

capacities to the extent that the plaintiff sought injunctive and declaratory relief.

The defendants have moved to dismiss the claims against them.   For the reasons set forth below, the motion is denied in substantial part.

**I.      Standard of Review**

When deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws inferences from those allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003).  The court's review is limited to "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken"  *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).  The court considers not whether the plaintiff ultimately will prevail, but whether he has asserted sufficient facts to entitle him to offer evidence to support his claim.  *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief.  Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*,

129 S. Ct. at 1950).  Even under this standard, however, the court liberally construes a *pro se* complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (*per curiam*) (internal quotation marks and citations omitted).

## II.     Facts

The facts taken from the Complaint are assumed to be true for purposes of this motion. The plaintiff is an inmate confined in a cell on death row at Northern.  On March 29, 2010, defendant Cahill was involved in an altercation with another death row inmate.  That same day, prison officials at Northern imposed a lockdown of the death row unit.  On March 31, 2010, officers searched each death row inmate's cell.  During the search of the plaintiff's cell, prison officials confiscated items of the plaintiff's property, including pornographic magazines.  The plaintiff alleges that he received a disciplinary report for using a wire as an antenna in his cell. After prison officials lifted the lockdown, all death row inmates were put on restraint status, requiring them to be placed either in handcuffs and leg shackles or just handcuffs every time they were escorted from their cells and back to their cells.

## III.    Discussion

The defendants argue that the plaintiff has failed: (1) to allege their personal involvement in the alleged violations of his constitutional rights, and (2) to allege the deprivation of a liberty interest in remaining free from restraints outside of his cell.

### A.     Personal Involvement

The defendants argue that the plaintiff has failed to sufficiently allege their involvement

in the confiscation of his pornographic magazines.  To recover money damages under section

1983, plaintiff must show that these defendants were personally involved in the constitutional

violations.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Supervisory officials cannot

be held liable under section 1983 solely for the acts of their subordinates.  *See Ayers v. Coughlin*,

780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show personnel involvement by demonstrating one or more of the

following criteria: (1) the defendant actually and directly participated in the alleged

unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the

wrong through a report or appeal; (3) the defendant created or approved a policy or custom that

sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed

such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the

correctional officers who committed the constitutional violation; and (5) the defendant failed to

take action in response to information regarding the occurrence of unconstitutional conduct.  *See*

*Colon*, 58 F.3d at 873 (citation omitted).  In addition, plaintiff must demonstrate an affirmative

causal link between the inaction of the supervisory official and his injury.  *See Poe v. Leonard*,

282 F.3d 123, 140 (2d Cir. 2002).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that a supervisor can

be liable only "through the official's own individual actions."  *Id.* at 676.  This decision arguably

casts doubt on the continued viability of some of the categories for supervisory liability.  The

Second Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal*.

*See Rispardo v. Carlone*, 770 F.2d 97, 117 (2d Cir. 2014) ("[w]e have not yet determined the

contours of the supervisory liability test . . . after *Iqbal*");  *Grullon v. City of New Haven*, 720

4

F.3d 133, 139 (2d Cir. 2013) (noting that decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but finding it unnecessary to reach the impact of *Iqbal* on the personal involvement requirements set forth in *Colon*, 58 F.3d at 873). Because it is unclear whether *Iqbal* overrules or limits *Colon*, I will continue to apply the categories for supervisory liability set forth in *Colon*.

### 1.    Warden Murphy

The Complaint includes general allegations against all defendants regarding the confiscation of the plaintiff's pornographic magazines on March 31, 2010.   In response to the motion to dismiss, the plaintiff states that he does not allege that Warden Murphy was involved in the confiscation of his magazines.  The motion to dismiss is granted with respect to any claims that Warden Murphy confiscated the plaintiff's pornographic magazines due to his lack of personal involvement.

### 2.    Captain Cahill

The defendants contend that the plaintiff has not alleged that Captain Cahill was directly involved in the confiscation of his pornographic magazines.  It is evident from the exhibits attached to the plaintiff's Complaint, that it was Property Officer Kit who confiscated the plaintiff's pornographic magazines on the ground that the plaintiff was not authorized to possess the magazines.  The plaintiff does not allege that Captain Cahill was involved in the search of his cell or the confiscation of the magazines.  In February 2011, however, Warden Quiros indicated that he had emailed Captain Cahill regarding the confiscation of the plaintiff's pornographic magazines.  Those allegations state a plausible claim that Captain Cahill became aware of the

confiscation of the plaintiff's pornographic magazines, but failed to take any action to remedy the situation.  The motion to dismiss is denied with respect to defendant Cahill.

### 3.      Warden Quiros, Deputy Wardens Faucher and Powers

The plaintiff alleges that he wrote to Warden Quiros and Deputy Warden Faucher and spoke to Deputy Warden Powers about the confiscation of his pornographic magazines.  He attaches exhibits to the Complaint reflecting his attempts to notify these defendants of the issue orally and in writing.   In May 2010,  Warden Quiros responded to the plaintiff's requests and indicated that the confiscation of the magazines was being researched.   In July 2010, Deputy Warden Faucher indicated that he would forward the plaintiff's request to Deputy Warden Powers for investigation.

These allegations and evidence state a plausible claim that defendants Quiros, Faucher and Powers were aware of the confiscation of the pornographic magazines, but failed to remedy the problem.  The motion to dismiss on the ground of lack of personal involvement is denied with respect to defendants Quiros, Faucher and Powers.

### B.      Restraint Status

The defendants contend that the use of handcuffs and leg shackles on inmates on death row is a normal part of prison life.  Thus, the defendants argue that the plaintiff has no liberty interest in remaining free from restraints when he leaves his cell on death row.

To establish a procedural due process claim, a plaintiff must show that he possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Tellier v. Field*, 280 F.3d 69, 79-80 (2d Cir. 2000).  "Liberty interest[s] may arise from the Constitution itself . . . or [they] may arise from an expectation or interest created by

6

state laws or policies." *Wilkinson v. Austin*, 545 U.S. 219, 221 (2005) (citations omitted).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Id.* at 474.  The Court explained that in the prison setting, liberty interests protected by Due Process will be "limited to freedom from restraint which. . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 485.  The Court concluded that Inmate Connor's conditions of confinement in disciplinary/punitive segregation for thirty days did not present the type of atypical, significant deprivation that might implicate a liberty interest.   Thus, Inmate Connor was not entitled to procedural due process protections prior to his placement in punitive segregation.   In *Wilkinson*, the Supreme Court made clear that the "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484).

Here, the plaintiff alleges that for fifteen years during his confinement on death row, he was not required to wear handcuffs and shackles when he left his cell.   He claims that at the end of March 2010, the defendants issued an order that he be placed on out-of-cell restraint status indefinitely due to the actions of another inmate.  The defendants did not provide him with any procedural protections prior to his placement on the restraint status.  He remained on out-of-cell restraint status for almost three years prior to filing this action.

The defendants contend, without support, that nothing about the plaintiff's allegations

suggests that his placement on out-of-cell restraint status was atypical or significant as compared to conditions in general population.  Given the duration of the plaintiff's placement on restraint status and the fact that the plaintiff alleges that inmates in general population, who are not on death row, are permitted to move outside of their cells without being handcuffed or shackled, the plaintiff has stated a plausible claim that he possessed a liberty interest in being free of out-of-cell restraints and the defendants failed to provide him with procedural due process in connection with his placement on this restraint status.  *See Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (factors to be considered in determining whether inmate suffered an atypical and significant hardship include "the duration of the" restrictive condition of confinement and "the extent to which the condition[] . . . differ[s] from other routine prison conditions") (internal quotation marks and citation omitted); *Colon v. Howard*, 215 F.2d 227, 231 (2d Cir. 2000) (inmate's confinement in Segregation Housing Unit "conditions for 305 days in our judgment is sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*").  The motion to dismiss is denied with respect to the plaintiff's claim regarding his placement on out-of-cell restraint status in violation of the Due Process Clause of the Fourteenth Amendment.

**IV.    Conclusion**

The Motion to Dismiss **[Doc. No. 21]** is **GRANTED** with respect to the claims against Warden Murphy pertaining to the alleged confiscation of the plaintiff's magazines and **DENIED** in all other respects**.**

The First Amendment claim relating to the defendants' alleged improper confiscation of the plaintiff's magazines remains pending against defendants Quiros, Faucher, Powers and Cahill

in their individual and official capacities and the Fourteenth Amendment due process claim

relating to the plaintiff's placement on restraint status for an indefinite time period remains

pending against defendants Murphy, Quiros, Faucher, Powers and Cahill in their individual

capacities and official capacities.

     SO ORDERED at Bridgeport, Connecticut this 30th day of March 2015.

                    /s/ STEFAN R. UNDERHILL
                    Stefan R. Underhill
                    United States District Judge